



FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 10, 2025

SEAN F. MCAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY,

Plaintiff,

v.

JEREMY RICHARDSON, individually and as Guardian of D.R., a minor; ANDY LOUIE and CHERYL LOUIE, a married couple, each individually and their marital community comprised thereof,

Defendants.

No. 2:24-CV-00308-RLP

ORDER GRANTING SUMMARY JUDGMENT

BEFORE THE COURT is Plaintiff Allstate Vehicle and Property Insurance Company's (Allstate) Renewed Motion for Summary Judgment, ECF No. 50. Allstate is represented by Dylan R. Knapp and Rory W. Leid. Defendant Jeremy Richardson is represented by Benjamin H. Wilson, William M. Compton, and Kirstopher Allan Bonham. Defendants Andy and Cheryl Louie appear pro se. This matter was submitted for consideration without oral argument.

For the reasons discussed below, Allstate's motion is granted.

BACKGROUND

Mr. Richardson is the managing member of Endless Seas, LLC. ECF No. 31-1 at 1. Mr. Richardson also co-owns Shadow Mountain, LLC, through which he owns an RV park in Port Angeles, Washington. *Id*. at 61; ECF No. 61-1 at 8. Before 2024, Defendants Andy and Cheryl Louie were the owners of 2384 N. Bob Lee Road, Sprague, Washington (henceforth referred to as "the Property"). *Id*. at 6. The Louies operated Four Seasons RV Park Resort on the Property. *Id*. at 64. Since 2016 or 2017, Mr. Richardson had been considering purchasing the Property, which he knew to be an RV park. *Id*. at 64-65.

In December 2023, Mr. Richardson expressed interest in purchasing the Property to commercial real estate broker Kayla Saunders. ECF No. 52 at 5. On December 21, 2023, Mr. Richardson emailed Ms. Saunders asking for profit and loss statements for the Property. *Id*. at 6. In January 2024, Mr. Richardson texted Ms. Saunders' cell phone about the Property, remarking "Insurance is crazy right now and commercial property rates are twice as high as normal." *Id*. at 14. Mr. Richardson texted Ms. Saunders again on February 7, asking if she knew "any good commercial insurance brokers?" *Id*. at 16.

Mr. Richardson individually signed a "Commercial & Investment Real Estate Purchase & Sale Agreement" for the Property on January 10, 2024. ECF No. 30 at 5. The Louies signed a warranty deed conveying the title to Endless Seas,

LLC on February 14, 2024. ECF No. 31-1 at 6. The Property came with a house, a shop, several other out-buildings, nine residential trailers, and seven boats. ECF No. 31-1 at 74-75.

Mr. Richardson emailed Ms. Saunders again on February 16, 2024, with a list of problems he observed on the Property. *Id*. at 18. Among his complaints were that "[t]he park is a mud pit and will need asphalt to be operational;" "None of the previous equipment is with the park to make it operational;" "The County says people can't live there longterm;" "All the cabin/trailers are trashed and need to be replaced;" "Overwhelming amount of bad reviews." *Id*. Mr. Richardson concluded that "someone needs to put millions of dollars to get [the Property] up and running right." *Id*.

On February 29, 2024, Mr. Richardson applied for a homeowner's insurance policy from Allstate for 2384 N. Bob Lee Road. ECF No. 29 at 15-20. Mr. Richardson later testified he believed he was insuring only the home on the Property. ECF Nos. 31-1 at 90-91; No. 61-1 at 8. The application asked "Is there any store, business, or professional activity in the building, at the applicant's premises, or at additional premises owned by the applicant?:" to which Mr. Richardson answered "NO." ECF No. 29 at 18.

It is Allstate's policy to not issue a homeowner's insurance policy to a commercial business. *Id*. at 2.

Allstate issued Mr. Richardson an insurance policy ("the Policy") covering the Property on March 1, 2024. ECF No. 20-1 at 4. The Policy provided:

> **Concealment, Fraud**
> This entire policy shall be void if, whether before or after a loss, the insured has willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto.

ECF No. 20-1 at 38.

After the Louies' sale, multiple tenants remained on the Property. ECF No. 31-1 at 17. Mr. Louie testified the RV park was shut down, and he was working to evict the remaining tenants. ECF No. 61-2 at 8-9. These tenants did not pay Mr. Richardson and left the Property within two weeks of the purchase. ECF No. 31-1 at 17.

The Property required extensive repairs after Mr. Richardson purchased it. ECF No.31-1 at 80-85. Mr. Richardson brought two employees from his Port Angeles RV park to assist with the repairs. ECF No. 31-1 at 83-84. These employees stayed in a trailer on-site, which Mr. Richardson testified was "typical[], when you own RV Parks, you hire people that live in RVs, and then you give them free space for work." ECF No. 31-1 at 84. These employees understood Mr. Richardson hired them to help get the RV park operational. ECF Nos. 53, ¶3; 54, ¶3.

Mr. Richardson moved into the house on the Property on March 21, 2024. ECF No. 31-1 at 78. A fire destroyed the house on the night of March 21-22, 2024. *Id*. at 79. Mr. Richardson filed an insurance claim with Allstate under the Policy the following day. ECF No. 8 at 8. After the fire, Mr. Richardson reopened the RV park on the Property as Northwest Lakeside Resort, LLC. ECF No. 31-1 at 63-64.

On September 16, 2024, Allstate initiated the instant action for declaratory relief against Defendants, seeking a declaration that the Policy is void due to misrepresentations in the application, and that Allstate has no duty to cover losses related to the Property. ECF No. 1.

ANALYSIS

Summary judgment will be granted if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a). In ruling on a motion for summary judgment, the Court views the evidence and inferences therefrom "in the light most favorable to the adverse party". *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008) (quoting *Jones v. Halekulani Hotel, Inc.*, 557 F.2d 1308, 1310 (9th Cir. 1977)). "A fact issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986)).

Allstate moves for summary judgment on its declaratory judgment claim. The Declaratory Judgment Act allows a court to recognize a parties' rights even where no immediate enforcement is sought, and further relief based on the declaratory judgment may be granted whenever necessary or proper. *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 300, 63 S.Ct. 1070 (1943). Where a district court sits in diversity jurisdiction, the interpretation of an insurance application is a question of state contract law. *Fid. Sec. Life Ins. Co. v. Cantu*, 752 F. Supp. 3d 1233, 1236 (W.D. Wash. 2024).

Allstate contends[1] that the Policy is void under the "Concealment, Fraud" clause of the Policy due to Mr. Richardson's material misrepresentation that there was no business activity occurring on the Property.[2]

---

[1] Allstate also contends the Policy is void due to a misrepresentation made during its investigation of Mr. Richardson's claim. ECF No. 50 at 20. As the Court finds the Policy void for Mr. Richardson's misrepresentation made in his application, the Court declines to rule this argument.

[2] Allstate contends Mr. Richardson made other misrepresentations in the application concerning the owner of the Property and whether business activity occurred on other properties he owned. ECF No. 50 at 13-15. As the Court finds the Policy void on other grounds, the Court declines to rule on these arguments as well.

In Washington, "[i]nterpretation of insurance policies is a question of law, in which the policy is construed as a whole and each clause is given force and effect." *Overton v. Consol. Ins. Co.*, 145 Wn.2d 417, 424, 38 P.3d 322 (2002). "The terms of a policy should be given a 'fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance.'" *Id*. (quoting *Sears v. Grange Ins. Ass'n*, 111 Wn.2d 636, 638, 762 P.2d 1141 (1988)). The Court must enforce the clear, unambiguous clauses of the policy, but ambiguous clauses will be construed in favor of the insured. *Morgan v. Prudential Ins. Co. of Am.*, 86 Wn.2d 432, 435, 545 P.2d 1193 (1976).

Where an applicant knowingly makes a material misrepresentation on an application for insurance with the intent to deceive the insurer, the insurer may avoid liability on the policy. *Kay v. Occidental Life Ins. Co.*, 28 Wn.2d 300, 301, 183 P.2d 181 (1947). One material misrepresentation will void the entire policy. *Ki Sin Kim v. Allstate Ins. Co.*, 153 Wn. App. 339, 354, 223 P.3d 1180 (2009). This principle of law is codified by RCW 48.18.090(1):

> no oral or written misrepresentation or warranty made in the negotiation of an insurance contract, by the insured or in his or her behalf, shall be deemed material or defeat or avoid the contract or prevent it attaching, unless the misrepresentation or warranty is made with the intent to deceive.

"Materiality is determined from the standpoint of the insurer, not the insured." *Ki Sin Kim*, 153 Wn. App. at 355. "A misrepresentation is material 'if a reasonable insurance company, in determining its course of action, would attach importance to

the fact misrepresented.'" *Id*. (quoting *Onyon v. Truck Ins. Exch.*, 859 F.Supp. 1338, 1341 (W.D. Wash. 1994).

"[I]f an insured knowingly makes a false statement, courts will presume that the insured intended to deceive the insurance company." *Id*. If the insurer demonstrates a knowingly made false statement, "the burden shifts to the insured to establish an honest motive or an innocent intent." *Id*. at 355-56. "The insured's bare assertion that she did not intend to deceive the insurance company is not credible evidence of good faith and, in the absence of credible evidence of good faith, the presumption warrants a finding in favor of the insurance company." *Id*.

As stated above, the application asked Mr. Richardson "Is there any store, business, or professional activity in the building, at the applicant's premises, or at additional premises owned by the applicant?:" ECF No. 29 at 18. Mr. Richardson answered this question "NO." *Id*.

There is no genuine dispute that Mr. Richardson purchased the Property with the intent to operate a business there. Mr. Richardson was in the business of owning and operating RV parks. He communicated with a commercial real estate broker concerning the business aspects of the Property, including asking for commercial real estate insurance. The commercial real estate purchase and sale agreement with the Louies clearly concerned the purchase of an operational RV park. Tenants from the previous business remained on the Property after Mr.

Richardson's purchase. Shortly thereafter, Mr. Richardson moved employees from one of his RV parks to the Property to assist in repairs, an act he testified was "typical[], when you own RV Parks." ECF No. 31-1 at 84. These employees too understood themselves to be a part of business activities on the Property. After the fire, Mr. Richardson operated an RV park on the Property.

Nevertheless, Mr. Richardson contends that because the application asked "*Is* there any . . . business [] activity," ECF No. 29 at 18 (emphasis added), on the Property, the application only asked whether there was business activity on the Property *at the time of the application*. Because the RV park had yet to reopen, Mr. Richarson contends there was no business activity occurring at the time he submitted the application. Mr. Richardson overemphasizes the role of the word "is" in the question. Mr. Richardson's position seems to be that one could validly obtain a homeowner's insurance policy for his business by closing for lunch, submitting the application, and then re-opening, all without making a misrepresentation as to business activity on the premises. No reasonable insurance applicant would understand the question in this way. A reasonable applicant would understand the question not to be asking about specific actions on the premises at the precise moment in time the applicant submits the application, but more generally whether business activity occurs there contemporaneous with the application. Here, the answer to the latter question was clearly "yes."

The Property operated as an RV park business immediately prior to Mr. Richardson's purchase. Mr. Richardson acquired the Property through a commercial real estate purchase and sale agreement. From the moment he began negotiations to purchase the Property, Mr. Richardson took steps to operate his own RV park business there. At the time of the application, the Property contained all the infrastructure necessary to operate as an RV park business. By the very nature of Mr. Richardson's purchase and his plans for the Property, any reasonable purchaser of insurance would have understood "business activity" was occurring there from the very first moment he owned it. For that reason, there is no genuine dispute that Mr. Richardson made a misrepresentation by answering "NO."

As Mr. Richardson made a knowing misrepresentation, it is his burden to produce credible evidence of good faith to rebut the presumption that his misrepresentation was made with the intent to deceive Allstate. He fails to do so.

Mr. Richardson's first defense is his idiosyncratic understanding of what the application asked, as explained above. However, his bare assertion of good faith (that he understood the application differently) cannot alone rebut the presumption that Mr. Richardson intended to deceive Allstate.

Mr. Richardson's second defense is his claim that he intended to only insure the home on the Property, not the entire property. However, the application asked whether business activity occurred "in the building [or] *at the applicant's*

*premises*." Even if Mr. Richardson intended to only insure the house at 2384 N. Bob Lee Road, the application required him to disclose business activity on the premises, i.e., the rest of the Property, as well. His asserted belief that he was only insuring the home is no defense to the misrepresentation he made.

Furthermore, there is uncontroverted evidence that Mr. Richardson sought out commercial real estate insurance while purchasing the Property, but less than a month later applied for the homeowner's insurance policy. This evidence undermines Mr. Richardson's assertion that he in good faith believed he could insure the home on the Property with a homeowner's insurance policy. Therefore, Mr. Richardson fails to rebut the presumption that his misrepresentation was made with the intent to deceive Allstate.

Allstate has produced uncontroverted evidence that it would not have issued a homeowner's insurance policy to Mr. Richardson had it known business activity occurred on the Property. Therefore, Mr. Richardson's misrepresentation was knowing, material, and made with the intent to deceive. Pursuant to the Policy's "Concealment, Fraud" clause and Washington law, the Policy is void and Allstate has no duty to indemnify Mr. Richardson for his losses. Allstate's Motion for Summary Judgment is therefore granted.

**ACCORDINGLY, IT IS ORDERED:**

1. Defendant Allstate's Renewed Motion for Summary Judgment, **ECF No. 50,** is **GRANTED**.

The District Court Executive is hereby directed to enter this Order and furnish copies to all counsel.

DATED October 10, 2025.

REBECCA L. PENNELL
UNITED STATES DISTRICT JUDGE